THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY SMITH

        Plaintiff,

vs.

Case No. 06-13301

DISTRICT JUDGE DENISE PAGE HOOD
MAGISTRATE JUDGE STEVEN D. PEPE

ALLAN BOSSEL,

        Defendant.
        _____/

**Report and Recommendation**

## I.    Introduction

Bobby Smith, Plaintiff, is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). On July 21, 2006, he filed this action under 42 U.S.C. §1983 against Defendant alleging violations of his First, Eighth and Fourteenth Amendment rights as well as violations of various state and federal laws (Dkt. # 1). In his complaint, Plaintiff alleges that while incarcerated in the Mid-Michigan Correctional Facility[1] Defendant, a residential unit officer ("RUO"), opened sealed mail that was written by Plaintiff and intended for Plaintiff's mother. *Id.* at 4. Defendant allegedly read this mail aloud, including references to Plaintiff's cell mate in an effort to sow discord, and then acted to have Plaintiff removed from his job in the kitchen based on the content of the mail. *Id.* at 5.

---

[1]Plaintiff is presently incarcerated in the Hiawatha Correctional Facility in Kincheloe, Michigan (Dkt. # 16, Ex. 1, p. 7).

1

On September 28, 2008, Defendant filed a Motion for Summary Judgment (Dkt. #15) to which Plaintiff responded (Dkt. # 28). Administrative Order 06-AO-032, reassigned this case from Magistrate Judge Wallace Capel, Jr. to Magistrate Judge Steven Pepe (no docket entry). For the reasons stated below, **IT IS RECOMMENDED** that Defendant's motion for summary judgment be **DENIED**.

**II. FACTS**

On July 20, 2003, the plaintiff filed a grievance against Defendant Bossel (Dkt. #1, ¶ 6) the contents of which are unconfirmed, yet uncontroverted, because as the Defendant states in his motion for summary judgment "The defendants do not currently have a copy of the plaintiff's grievance, so they will assume for purposes of this motion that the plaintiff engaged in protected conduct." (Dkt. #27, p. 10). It is Plaintiff's belief that Defendant then retaliated against him on December 1, 2003, by searching his cell (Dkt. #1, ¶¶ 8, 10, 29). Defendant claims that he was assigned to the Plaintiff's unit on the date in question and conducted a random cell search of cell 2-249, which happened to be Plaintiff's cell (Dkt. #28, ¶ 3). During that search, Defendant read a letter of the Plaintiff's that was in an envelope. According to Defendant the envelope was stamped but unsealed (Dkt. #28, ¶ 10). The Plaintiff, however, claims that the envelope was sealed. (Dkt. #1, ¶ 12). The envelope which was taken under the control of Defendant and the MDOC has been destroyed.

Plaintiff alleges that the Defendant read the letter out loud to the plaintiff's cellmate in an attempt to engender strife between the two, a charge Defendant denies (Dkt #1, ¶ 14, 15). The contents of the letter were of concern to Defendant Bossel, accordingly he wrote a notice of intent (NOI) on the Plaintiff (Dkt. #28, Ex. B, Bossel Affidavit, ¶ 7). The passage that caused

Defendant concern were, in his interpretation, sexually predatory in nature.  The plaintiff had written, "This female name[d] Mrs. Seely wants to get some jungle fever, but its [sic] to[o] many loose lips, so she can't act out her true fantasies if the opportunity presented itself!!" (Dkt. #27). Defendant claims he read the letter as he was taught to do so in training but did not read the contents aloud; he asked Plaintiff if he was having problems with his cellmate Jordan (Dkt. #28, ¶¶ 4, 5, ¶ 8).  As a result of the NOI, Plaintiff lost his kitchen job (Dkt. #1, ¶ 16).

Plaintiff also alleges that Defendant retaliated against him by writing a "false" threatening behavior ticket, on which he was found not guilty (Dkt. #1, ¶ 30, 32). Defendant claims that there were actually two charges – Threatening Behavior and Creating a Disturbance – to which the Plaintiff was found guilty of the Creating a Disturbance charge, but conceded Plaintiff was found not guilty on the other charge.

## III.   ANALYSIS

### A. Legal Standard

#### (1)   Standard for Liability Under § 1983

In order to demonstrate liability under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; 2) the deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994) (citing *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S. Ct. 872 (1992)).

#### (2)   Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific

facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

    B.    <u>**Factual Analysis**</u>

        (1)    **First Amendment Claim**

Defendant argues that he was conducting a routine shakedown of Plaintiff's cell, and was justified in reading Plaintiff's letter because it was unsealed, in plain view, and in Plaintiff's control. Defendant's argument, however, does not establish that there exists no genuine issue of material fact. In *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003), the court stated, "A prisoner's right to receive mail is protected by the First Amendment, but prison Officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." The court went on to say "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prisoner security." "However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights." *Id*. (citations omitted).

*Thornburgh v. Abbott,* 490 U.S. 401, 411-12 (1989), make it clear that greater deference is to be accorded to decisions of prison officials to regulate incoming items to a prison because of security concerns than items outgoing from an inmate as was involved in *Procunier v. Martinez*, 416 U.S. 396 (1974). The Thornburgh Court noted:

> Dangerous outgoing correspondence is more likely to fall within readily identifiable categories: examples noted in *Martinez* include escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion.

*Thornburgh v. Abbott,* 490 U.S. at 12

In this case, Defendant is unable to articulate those aspects about this letter that created a

reasonable suspicion that prison security or regulations were being violated. Nor does he provide an explanation that he read the letter pursuant to a uniformly applied policy directive or regulation that meets the *Martinez* standard of being "generally necessary" to a legitimate governmental interest such as maintaining order or security. *Procunier v. Martinez*, 416 U.S. at 414. Defendant only offers that the letter was in an unsealed envelope and in plain view. These two characteristics, however, do not give Defendant the justification to open Plaintiff's mail.

Plaintiff, on the other hand, provides facts to find that there is a genuine issue of material fact as to whether Defendant acted in an arbitrary and capricious fashion through his own testimony and that of his former cellmate. According to Plaintiff, Defendant targeted Plaintiff's cell and opened and read aloud a private letter with Plaintiff's cellmate present creating tension between Plaintiff and his cellmate. These actions do not further the goal of prison security.

Additionally, Defendant was in a position to preserve or to recommend preservation of the envelope to allow for its inspection to resolve outstanding questions as to the condition of the sealant on the envelope and its overall appearance. As it is Defendant's burden to demonstrate that there no genuine issue of material fact exists, the destruction of the evidence by the Defendant should be construed in Plaintiff's favor.

**IT IS RECOMMENDED** that summary judgment be **DENIED** on this issue.

### (2) Retaliation

A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected

conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The plaintiff has the burden of proof on all three elements. Thus, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

It is undisputed that Plaintiff engaged in protected conduct by filing the grievance against Defendant. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996)(inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf).

Defendant argues that the search of Plaintiff's cell was random and that no temporal relationship existed between the filing of the grievance and the search which took place four months later. Defendant, however, does not cite to any authority that four months is as a matter of law an excessive amount of time preventing a finding of a causal connection. Furthermore, the facts, as set forth by Plaintiff, regarding the non-random nature of the cell search, the unconstitutional search of his mail by the Defendant, the reading aloud of its contents, the NOI leading to his termination from kitchen duty and the filing of a grievance are sufficient for a reasonable trier of fact to conclude that Defendant acted in retaliation for the prior grievance filed by Plaintiff. **IT IS THEREFORE RECOMMENDED** that summary judgment **BE DENIED** on this issue.

(3) **Immunity**

Defendant asks for Eleventh Amendment immunity or in the alternative qualified immunity. It is not clear from Plaintiff's pleadings whether he is suing Defendant in his official or individual capacity. The Eleventh Amendment bars a suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of relief sought.

*Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1989); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978). The State of Michigan has not consented to civil rights suits in federal courts. *See Abick v. Michigan,* 803 F. 3d 874, 877 (6th Cir. 1986). There are three exceptions to Eleventh Amendment immunity:

> "First, a state may waive the protection of the Amendment by consenting to the suit . . . the second exception to the Eleventh Amendment bar is that Congress, under certain provisions of the Constitution, may abrogate the sovereign immunity of the states through statute . . . under the third exception, a federal court may enjoin a "state official" from violating federal law."
> *Lawson v. Shelby County, TN,* 211 F. 3d 331, 33-335 (6th Cir. 2000) (citations omitted)

The State of Michigan has not waived its Eleventh Amendment immunity. Additionally, in *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989), the Supreme Court found that "Congress, in passing §1983, had no intention to disturb the States' Eleventh Amendment immunity . . ." the Court also reiterated that "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office . . . As such, it is no different from a suit against the state itself." *Id.* at 66, 71 (citations omitted). Moreover, the third exception does not apply here because it only applies when the remedy sought is injunctive relief, whereas here Plaintiff seeks monetary damages (Dkt. #1). *Lawson,* 211 F. 3d at 335. Therefore, because Defendant was an employee of the state during the relevant time, and none of the Eleventh Amendment immunity exceptions apply, even with a constitutional violation as claimed by Plaintiff, Defendant cannot be sued in his official capacity.

Defendant, however, can be sued in his individual capacity. Government officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982); *see also Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Thomas v. Whalen*, 51 F.3d 1285, 1289 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 518 (1995); *Pray v. Sandusky*, 49 F.3d 1154, 1157-58 (6th Cir. 1995). Qualified immunity is an affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo,* 446 U.S. 635 (1980). "Since qualified immunity is a defense, the burden of pleading it rests with the defendant." *Id.* at 640. *See also Veney v. Hogan,* 70 F.3d 917, 921-22 & n. 5 (6th Cir. 1995). While a plaintiff may use a generalized "notice" form of complaint, once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Id.* at 922. The Sixth Circuit has held that if a defendant raises a qualified immunity defense, the plaintiff bears the burden of showing that the constitutional right alleged to have been violated was clearly established at the time of the alleged violation. *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1174 (6th Cir. 1988); *Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). "[I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself." *Seiter*, 858 F.2d at 1177.

Qualified immunity seeks to ensure that defendants "reasonably can anticipate when their conduct may give rise to liability," *Davis v. Scherer,* 468 U.S. 183, 195 (1984), by imposing liability only if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635 640 (1987). "[I]n effect the qualified immunity test is simply the adaption of the fair warning standard to give officials (and, ultimately, governments) the same protections from civil

9

liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes." *United States v. Lanier,* 117 S. Ct. 1219, 1227 (1997). Splits of authority among the circuits is "a circumstance [that] may be taken into account in deciding whether the warning is fair enough" but it is not a categorical bar to a finding of liability. *Id.* To be "clearly established" there need not be prior relevant case law "on all fours" or deciding "the very action in question." *Anderson,* 483 U.S. at 640. *See also McBride v. Village of Michiana,* 100 F.3d 457, 461 (6th Cir. 1996). *McCloud v. Testa,* 97 F.3d 1536, 1557 (6th Cir. 1996), noted that if courts required prior precedent on the specific facts at issue in the pending case, "qualified immunity would be converted into a nearly absolute barrier to recovering damages against an individual government actor. . . ."

The Supreme Court in *Siegert v. Gilley*, 500 U.S. 226, 111 S. Ct. 1789 (1991), set out the "analytical structure under which a claim of qualified immunity should be addressed." The Court is to determine whether the plaintiff has alleged the violation of a clearly established constitutional right. This is a purely legal question. It involves two steps. The first step is to determine whether the alleged conduct violates any constitutionally protected right at all. The second step is to determine whether that constitutional right was clearly established at the time of the defendant's action or failure to act. If the answer to the first question is in the negative, the Court need not consider the second question because if no constitutional right exists, no such right would have been clearly established.

The question whether an official is protected by qualified immunity does not turn on the subjective good faith of the defendants, but rather turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were clearly established at the time it was

taken. *Harlow*, 457 U.S. at 818-19; *Mackay v. Dyke*, 29 F.3d 1086, 1094 (6th Cir. 1994). Qualified immunity is appropriate either on the basis that the right allegedly violated was not at the time "clearly established," or if "clearly established," was one that a "reasonable" person in the defendant's position could have failed to appreciate would be violated by his conduct. *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995) (quoting *Anderson*, 483 U.S. at 640). Thus, even where the general rule is clearly established, it may be open to question whether the defendant's specific action comes withing the scope of the general rule. Officials may be entitled to qualified immunity when their decision is reasonable, even though mistaken, in determining that their action did not fall within the scope of a clearly established general rule. *Id*. The Supreme Court urges that the lower courts follow the *Siegert* sequence and first determine whether plaintiff has alleged a constitutional deprivation at all before considering -- or too readily determining -- that it was not clearly established.

Plaintiff has made a colorable claim of the violation of his First Amendment rights. The facts taken in the light most favorable to him establishes that Defendant did not have a reasonable suspicion that the letter violated prison regulations. He did not act in accordance with any policy directive or regulation authorizing the reading of an inmate's outgoing mail. Defendant has failed to identify any characteristics about the letter which created a suspicion that Plaintiff was a threat to prison security. Furthermore, Plaintiff offers proofs that Defendant Plaintiff's cell was the only cell search down, and that Defendant was not assigned to that area.

Defendant's alleged actions in reading letter aloud to Plaintiff's cellmate, which could sow discord are in stark contrast to Defendant's assertion that this was a routine action done solely for the purpose of ensuring security.

Having determined that a colorable claim of a violation of a constitutional right exists,

11

the next prong of the analysis is to determine if this right was clearly established such that a reasonable person would understand that his or her actions would violate that right. The First Amendment protects a prisoner's incoming mail from a guards capricious and arbitrary interference. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993); *Bell-Bey v. Williams*, 87 F.3d 832, 836 (6th Cir. 1996). The *Martinez* and *Abbott* clearly establish that even broader protections are generally accorded to an inmate's outgoing mail. On these facts, a jury could find that Defendant's actions were objectively unreasonable in light of clearly established constitutional rights in light of a paucity of factors which created suspicion and that the Defendant was not assigned to Plaintiff's cell block at the time of the search, as well as the reading of the letter aloud. Defendant is not entitled to qualified immunity.

### III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendant's motion for summary judgment be **DENIED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: October 30, 2008                                 s/ Steven D. Pepe
Ann Arbor, MI                                           United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 30, 2008.

                                                        s/V. Sims
                                                        Case Manager